Charles F. REUBEN, M.D., Plaintiff-Respondent,

v.

Keith D. KOPPEN, Keith D. Koppen, d/b/a Koppen Surveying, Inc. and Keith D. Koppen, d/b/a KDK Surveying, Inc., Defendants,

Diane HIGGINS, d/b/a Lake Homes, Defendant-Third-Party Plaintiff-Appellant.

Court of Appeals

*No. 2008AP3192. Submitted on briefs January 14, 2010. —Decided March 10, 2010.*

2010 WI App 63

(Also reported in 784 N.W.2d 703.)

759

761

On behalf of the defendant-third-party-plaintiff-appellant, the cause was submitted on the briefs of *A. Erick Fabyan* of *Haight & Fabyan, S.C.*, Hartland.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Matthew R. McClean* of *Davis & Kuelthau, S.C.*, Milwaukee.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Diane Higgins, d/b/a Lake Homes (Higgins) appeals from an order for judgment awarding Charles F. Reuben, M.D., damages in the amount of $46,936.80, together with WIS. STAT. § 100.18(11)(b) (2007–08)[1] attorney fees and costs in the amount of $103,708.35. Higgins contends that the circuit court erred when it changed the jury's special verdict. The jury had answered "no" when asked whether Higgins made an untrue, deceptive or misleading statement or representation to Reuben and therefore violated § 100.18. The circuit court changed the answer to this verdict question to "yes." It then directed a verdict on the follow-up question, finding that Higgins made the statement or representation "with the intent to sell [her] property" to Reuben. Higgins also contends that the economic loss doctrine precludes recovery, that no credible evidence supports the jury's finding on strict liability, and the court made several erroneous rulings on the admission of evidence. We agree with Higgins that the circuit court improperly changed two of the jury's special verdict answers and improperly awarded statutory costs and fees to Reuben. We disagree with Higgins on the remainder of her appellate contentions and therefore affirm the balance of the order for judgment.

## BACKGROUND

¶ 2. This case originates from a real estate transaction between Reuben, the buyer, and Higgins, the seller. Higgins owned property bordered by Okauchee

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise stated.

Lake on one side and Tierney Channel on another. This property is subject to building restrictions administered by Waukesha county.

¶ 3. On May 1, 2002, certified surveyor Keith Koppen prepared a survey drawing of the property for Higgins. Koppen followed up with a topographic survey on May 21. Both the survey drawing and the topographic survey contained a legal description of the property, a statement attesting that Koppen has surveyed the property, and Koppen's "Wisconsin Land Surveyor" seal. Koppen testified that he was never directed by Higgins to actually survey the property. He stated that he took the legal description, the existing house location, and the lake location from a survey that had been done by Metropolitan Survey Service on December 7, 1983.

¶ 4. In September 2003, Higgins purchased the property from the family who had owned it for generations. She planned to demolish the existing house and build a new one there. On November 24, 2003, Koppen revised his May 1, 2002 survey drawing to show a proposed new house on the property, but made no other changes. That document is dated May 1, 2002, and contains the handwritten notation, "Revised 11/24/03."

¶ 5. In 2004, Reuben approached Higgins about purchasing lake property. She showed him several other available parcels, but Reuben had decided that the property Higgins had recently purchased was the lot he wanted. During their conversations about the property, Higgins gave Reuben the November 2003 survey drawing by Koppen. Reuben believed the document was a certified survey.

¶ 6. Reuben made his initial offer to purchase on May 19, 2004. With his offer, he included a survey contingency requiring Higgins to provide a current

survey of the property that described the property, all improvements, all boundary lines, zoning setbacks, adjacent roadways, recorded easements, and more. Higgins submitted a counteroffer the next day, which stated that all contingencies were "to be automatically waived by June 20, 2004 if written disapproval or approval is not given to buyer prior to that date." The counteroffer also stated, "Existing [s]urvey has been provided by seller. Any additional survey to be paid by the buyer."

¶ 7.　On May 21, 2004, the day after Higgins made her counteroffer, Reuben obtained a topographic survey from Koppen, which again included the legal description, a statement indicating that Koppen had surveyed the property, and Koppen's surveyor seal. On May 27, Reuben submitted a counteroffer to Higgins and she accepted. Reuben's counteroffer deleted the survey contingency.

¶ 8.　Reuben then hired Koppen to create a "new survey drawing and revised legal [description]" that included two strips of land outside the previously surveyed property. Koppen obliged, submitting a June 14, 2004 survey drawing that added the two extra strips of land and expanded the legal description accordingly. This survey drawing was originally dated May 21, 2004, and was marked as revised on July 28, 2004. As with the previous drawings, these documents contained the original legal description, a statement that Koppen had surveyed the property, and his surveyor seal.

¶ 9.　Reuben submitted Koppen's survey drawings and obtained a zoning permit from the county. He then hired a construction company, who hired a new surveyor, Jahnke & Jahnke, to stake out the boundaries of the proposed new dwelling. The surveyor began staking the site, but stopped when it became apparent that the

setbacks would be an issue. When Reuben learned of the problem, he contacted Koppen. Reuben discovered that Koppen had never surveyed the property and that the Jahnke & Jahnke measurements were correct. Reuben then advised the county of the problem and the county revoked the zoning permit.

¶ 10. Reuben filed a lawsuit against Koppen on May 8, 2006, and followed on October 12 with an amended complaint that brought in Higgins as a defendant.[2] Reuben alleged negligence and negligent misrepresentation against Koppen. He alleged deceptive trade practice in violation of WIS. STAT. § 100.18 and negligent misrepresentation against Higgins.[3] A four-day jury trial began on June 17, 2008. With regard to Higgins, the jury's verdict stated in relevant part:

**QUESTION NO. 1:** Did Diane Higgins make a statement or representation to Dr. Charles Reuben that was untrue, deceptive or misleading, as defined in Wisconsin Statute § 100.18?

**ANSWER** No_____

[2] Reuben also sued the architect he had hired to design his new house; however, they settled before trial and the architect obtained a *Pierringer* release. *See Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

[3] WISCONSIN STAT. § 100.18(1) states in relevant part: "No person . . . with intent to sell . . . any real estate . . . shall make . . . [a] representation or statement of fact which is untrue, deceptive, or misleading." Section 100.18(12)(b) adds: "This section does not apply to a person licensed as a broker . . . while that person is engaged in real estate practice . . . unless that person has directly made . . . an assertion, representation or statement of fact with the knowledge that the assertion, representation or statement of fact is untrue, deceptive or misleading."

IF AND ONLY IF YOU HAVE ANSWERED "YES" TO QUESTION NO. 1, THEN ANSWER QUESTION NO. 2. IF AND ONLY IF YOU HAVE ANSWERED "NO" TO QUESTION NO. 1, THEN PROCEED TO QUESTION NO. 3.

**QUESTION NO. 2:** Was Diane Higgins' statement or representation done with the intent to sell the Okauchee Lake property to Dr. Charles Reuben?

**ANSWER**_____

**QUESTION NO. 3:** Did Diane Higgins make an untrue representation of fact regarding the existence of an actual survey dated May 1, 2002 and revised November 24, 2003 based on her personal knowledge or in circumstances which she necessarily ought to have known the facts?

**ANSWER** Yes_____

IF AND ONLY IF YOU HAVE ANSWERED "YES" TO QUESTION NO. 3, THEN ANSWER QUESTION NO. 4. IF AND ONLY IF YOU HAVE ANSWERED "NO" TO QUESTION NO. 3, THEN PROCEED TO QUESTION NO. 5.

**QUESTION NO. 4:** In view of all of the evidence, including Dr. Charles Reuben's education, background, and right to rely without independent investigation, did Dr. Charles Reuben believe such representation to be true and justifiably rely on it to his monetary damage?

**ANSWER** Yes_____

IF AND ONLY IF YOU HAVE ANSWERED "YES" TO QUESTION NO. 2 OR QUESTION NO. 4, THEN ANSWER QUESTION NO. 5.

**QUESTION NO. 5:** What sum of money will fairly and reasonably compensate Dr. Charles Reuben for his monetary damage caused by Diane Higgins?

ANSWER $ 46,936.80

¶ 11.  Reuben moved for postverdict relief, asking the circuit court to change the jury's answer to Question No. 1 from a "no" to a "yes." He also moved the court to answer "yes" on Question No. 2, which, because of its answer to Question No. 1, the jury had left blank. The court granted the motions and entered an order accordingly. The court then held a hearing on the question of attorney fees based on the finding that Higgins had violated Wis. Stat. § 100.18. The court ordered Higgins to pay Reuben $103,708.35 for his attorney's fees, plus costs. Higgins appeals.

## DISCUSSION

¶ 12.  Higgins presents seven issues on appeal. She contends that the court erred when it changed the jury's answers to the special verdict questions. She asserts that the economic loss doctrine precluded any recovery for strict liability or negligent misrepresentation and, regardless, no credible evidence supported the jury's verdict on strict liability misrepresentation. She challenges the circuit court's evidentiary rulings and refusal to dismiss on indispensible party grounds under Wis. Stat. § 803.03(3), and argues that the court improperly refused to hold a hearing on the reasonableness of the attorney fees. We take each issue in turn.

*Changing the Jury's Special Verdict Answers*

¶ 13.  At the motion hearing, the court stated that the answer to Question No. 1 was "obviously logically inconsistent" with the answer to Question No. 3. "Inconsistent verdict" is a term used to describe jury

769

answers that are "logically repugnant to one another." *See Kain v. Bluemound E. Indus. Park, Inc.*, 2001 WI App 230, ¶ 40, 248 Wis. 2d 172, 635 N.W.2d 640 (citation omitted). Inconsistency exists when answers cannot be reconciled or cannot be reconciled without eliminating or altering an answer. We uphold a jury verdict on review for inconsistency "when the record is such that the jury could have made both of the findings that are claimed to be inconsistent." *See Sharp ex rel. Gordon v. Case Corp.*, 227 Wis. 2d 1, 20, 595 N.W.2d 380 (1999). We also presume that the jury followed the law. *Kain*, 248 Wis. 2d 172, ¶ 43.

■

¶ 14.   The circuit court determined that the jury verdict was inconsistent because the jury found in Question No. 1 that Higgins did not violate Wis. Stat. § 100.18, yet in Question No. 3 it found that Higgins had made an untrue representation of fact regarding the November 2003 survey drawing that she knew or should have known was untrue. The court concluded that "a claim made under [§] 100.18 has three elements that do not include reliance . . . [and] element two is in effect the same as question three on the verdict." The court added, "I do believe that the answer in the affirmative to question three is the kind of behavior that the legislature intended to curtail when it comes to actions brought under [§] 100.18."

¶ 15.   With regard to the first cause of action, deceptive trade practice under Wis. Stat. § 100.18(1), the court instructed the jury that it needed to be convinced of three elements:   (1) that Higgins "made, published, or placed before Dr. Charles Reuben a statement or representation concerning the sale of the Okauchee Lake property"; (2) that the statement or representation was "false, erroneous, or [did] not state

or represent things as they are," regardless of Higgins' knowledge as to its falsity as long as it was made with the "intent to sell the Okauchee Lake property or with the intent to induce the purchase of the Okauchee Lake property"; and (3) that Reuben sustained a monetary loss as a result of the statement or representation. *See* Wis JI—Civil 2418.

¶ 16.   Next, the jury was instructed to deliberate on the question of strict liability misrepresentation. With regard to this cause of action, the jury was directed to consider five factors. It was asked whether:   (1) Higgins made a representation of fact; (2) the representation of fact was untrue; (3) Higgins made the representation as a fact based on her own personal knowledge or in circumstances in which she should have known the truth or untruth of the statement; (4) Higgins had an economic interest in the transaction and stood to make a financial gain; and (5) Reuben believed the representation to be true and relied on it. *See* Wis JI—Civil 2402.

¶ 17.   As demonstrated by the jury instructions, the facts found by the jury could support one cause of action and not the other. The court defined deceptive trade practice to include an element of intent, specifically:   Was the untrue representation made with the "intent to sell the Okauchee Lake property or with the intent to induce the purchase of the Okauchee Lake property?" This element is necessary for the Wis. Stat. § 100.18 cause of action, but is not an element of the strict liability misrepresentation covered by special verdict Question No. 3. *See Kailin v. Armstrong*, 2002 WI App 70, ¶ 40, 252 Wis. 2d 676, 643 N.W.2d 132 (each variety of common law misrepresentation claim "has elements not necessary for a claim under [§ 100.18], and the statute has elements none of those have").

¶ 18. In its rationale, the circuit court explained why it was rejecting the jury verdict and making its own findings of fact:

> I don't believe there is ultimately any dispute in the record that Dr. Reuben was a very willing buyer and that Ms. Higgins was a willing seller. I reject solely out of hand the argument of counsel on her behalf that she didn't want to sell this property. She wanted to sell the property at a certain price and she fixed the price and she had a unique piece of property that Dr. Reuben wanted and she knew that.
>
> . . . .
>
> Miss Higgins is a licensed real estate broker . . . . She had the position of power in this. Dr. Reuben may have had the money but she had the position of power. She had a piece of real estate that he wanted. And having said that, there was still salesmanship that went on . . . .

The circuit court made independent credibility determinations to reach its findings of fact:

> I was not impressed with the testimony of Ms. Higgins. I will just make that statement . . . . She's the one person in the trial that knew everything, at least originally, that there was no new survey done in 2003; that Mr. Koppen did what she asked him to do or contracted with him to do or paid him to do not a full survey . . . . And Diane Higgins didn't pay for anything other than what she felt comfortable in culminating or completing the deal with the individuals from whom she purchased the property . . . . [S]he knew the importance of that document to Dr. Reuben as exemplified in the offer to purchase. Yet she sat silently and she presented that document to Dr. Reuben as in effect a

more recent survey than one conducted in 1983. I believe it's that kind of behavior that [WIS. STAT. §] 100.18 is specifically designed to prevent.

Having made its findings and credibility determinations, the court then reached a conclusion as to the element of intent in special verdict Question No. 1:

It may be and we have discussed on this record here today some of the circumstances as put forth by counsel for Ms. Higgins that there was no intent to induce [a sale]. It may be in the traditional sense this is done to get someone to buy a piece of real estate . . . . In this case it was done with intent, I believe, to get the sale to occur at a particular time because of the tenants, because of other issues . . . . I think there is ample testimony in the record to support that this failure to disclose the age of the actual survey presented as the "existing" survey was done with intent to sell that property to Dr. Reuben even though he was a willing [buyer] at the particular time that the sale occurred.

The circuit court then changed the answer to special verdict Question No. 1 from "no" to "yes" and answered follow-up Question No. 2 "yes." Reuben's WIS. STAT. § 100.18 cause of action was revived.

¶ 19.   When a circuit court decides as a matter of law that the evidence does not support the jury's findings, this presents a question of law that we review de novo. *See Walter v. Cessna Aircraft Co.*, 121 Wis. 2d 221, 231, 358 N.W.2d 816 (Ct. App. 1984). On appeal, we view the evidence in the light most favorable to the jury's verdict, and we will sustain the jury's verdict if there is any credible evidence "under any reasonable view, that leads to an inference supporting the jury's

finding." *Morden v. Continental AG*, 2000 WI 51, ¶¶ 38–39, 235 Wis. 2d 325, 611 N.W.2d 659. We search the record for credible evidence to uphold a jury verdict, not for evidence to support a verdict that the jury could have reached but did not. *Id.*, ¶ 39. A court must uphold a jury verdict "even though [the evidence] be contradicted and the contradictory evidence be stronger and more convincing." *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 390, 541 N.W.2d 753 (1995). This standard applies to the circuit court as well as the appellate court. *Id.* at 388.

¶ 20.    When we review an order changing a jury's answers, we begin with considerable respect for the circuit court's ability to assess the evidence; however, we may overturn the decision to change the jury's answers if the record reveals that the circuit court was "clearly wrong." *Richards v. Mendivil*, 200 Wis. 2d 665, 671–72, 548 N.W.2d 85 (Ct. App. 1996). "When a circuit court overturns a verdict supported by 'any credible evidence,' then the circuit court is 'clearly wrong' in doing so." *Weiss*, 197 Wis. 2d at 389. If we encounter "any credible evidence in the record on which the jury could have based its decision," we will affirm that verdict. *Morden*, 235 Wis. 2d 325, ¶ 39 (citation omitted).

¶ 21.    Even though the circuit court considered Higgins' "salesmanship" a sign that she used the survey drawing to induce Reuben to purchase the property, the jury rejected that inference. It was not inconsistent for the jury to find that Higgins made an "untrue representation of fact regarding the existence of an actual survey dated May 1, 2002 and revised November 24, 2003," and at the same time determine that Higgins did

not give Reuben the document with the intent to induce the sale. WISCONSIN STAT. § 100.18 provides a cause of action and remedies separate from common-law claims of intentional misrepresentation, strict liability misrepresentation, and negligent misrepresentation. *See Kailin,* 252 Wis. 2d 676, ¶ 40.

¶ 22.  Higgins testified that she had planned to build a "spec home" on this property. She acknowledged that she had given Reuben the 2003 survey drawing, but testified that she had also told him that he should get his own survey done or waive the survey contingency in his offer to purchase. She also emphasized that she had not intended to sell that parcel, and relented only when Reuben insisted that no other parcel would do. Higgins was forthcoming about her reluctance to incur additional expenses connected with the sale of the property, particularly in light of the fact that she had not been prepared to sell it when Reuben approached her.

¶ 23.  If Higgins did not give the 2003 survey drawing to Reuben with the "intent to sell the Okauchee Lake property or with the intent to induce the purchase of the Okauchee Lake property," her actions did not meet the definition of an unfair trade practice under WIS. STAT. § 100.18(1). *See* WIS JI—CIVIL 2418. Higgins' testimony at trial provided the credible evidence necessary to support the jury's answer to Question No. 1 in the negative. The circuit court was clearly wrong to reject the jury's finding because the court felt a different interpretation of the evidence was more reasonable. *See Morden,* 235 Wis. 2d 325, ¶ 38 (if there is any credible evidence under any reasonable view that leads to an inference supporting the jury's finding, the court must not overturn that finding).

*Postverdict Assertion of the Economic Loss Doctrine*

■

¶ 24.   At the postverdict hearing, Higgins raised the economic loss doctrine as a bar to Reuben's misrepresentation claims and for support directed the court to *Below v. Norton*, 2008 WI 77, 310 Wis. 2d 713, 751 N.W.2d 351. The economic loss doctrine "is a judicially created doctrine that seeks to preserve the distinction between contract and tort," and serves to preserve the parties' opportunity to allocate risk by contract. *Id.*, ¶ 24 (citation omitted). Thus, parties to a contract can only pursue contract remedies when asserting an economic loss claim. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 28, 283 Wis. 2d 555, 699 N.W.2d 205. In the case of a residential real estate transaction, the economic loss is the property's inadequate value because it is allegedly inferior. *See Below*, 310 Wis. 2d 713, ¶ 25.

¶ 25.   Reuben vehemently objected to Higgins' attempt to make that argument postverdict, stating:

> The economic loss doctrine is new argument . . . . The entire defense for two years has been that we shouldn't get any money because the survey was taken out of the contract; so to come in here and at 40 days after trial and say we were limited to contractual remedies . . . is a complete shift of direction . . . that's remarkable.[4]

---

[4] On appeal, Reuben asserts that the economic loss doctrine is in the nature of an affirmative defense and must be included in the responsive pleadings. *See Trinity Lutheran Church v. Dorschner Excavating, Inc.*, 2006 WI App 22, ¶ 25, 289 Wis. 2d 252, 710 N.W.2d 680. However, as Higgins points out, case law does not expressly require the economic loss doctrine to be pled as an affirmative defense, it simply reflects common practice. *See, e.g., id.*; ¶ 25; *Peterson v. Cornerstone Prop. Dev., LLC,*

The circuit court agreed, stating that the economic loss doctrine was "raised well beyond the eleventh hour . . . . [I]t was not raised in a timely fashion pursuant to statute for motion for directed verdict, and it certainly was not raised pretrial even though [the *Below*] decision came out at least six weeks, if not two months, before trial."

¶ 26. In Wisconsin, every defense, except the defense of improper venue, is required to be asserted in the responsive pleading, except that certain defenses may, at the option of the pleader, be made by motion. WIS. STAT. § 802.06(2)(a). One of the exceptions is the allegation that the plaintiff has failed to state a claim upon which relief may be granted. Sec. 802.06(2)(a)6. Higgins argues that her responsive pleading alleged that Reuben failed to state a claim upon which relief could be granted and that her motion for summary judgment also asserted that Reuben could not support a claim for misrepresentation. These assertions, Higgins suggests, sufficiently raised the economic loss doctrine as a bar to the misrepresentation claims. We disagree.

¶ 27. Although Higgins did assert that Reuben had not pled a viable claim for misrepresentation, her responsive pleading did not specifically set forth the economic loss doctrine as grounds for that assertion. Furthermore, in her summary judgment motion, Higgins alleged (1) the absence of reliance by Reuben, (2) the absence of any pecuniary loss other than possibly the money paid to an architect for drawings based on an inaccurate survey, and (3) that Reuben's own negligence precluded him from bringing a negligent misrepresen-

2006 WI App 132, ¶¶ 10–11, 294 Wis. 2d 800, 720 N.W.2d 716; *Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc.*, 2002 WI App 205, ¶ 6, 257 Wis. 2d 511, 651 N.W.2d 738.

tation claim against Higgins. Nothing in Higgins' pleading or motion raises the economic loss doctrine or any other theory to suggest that Reuben was limited to contractual remedies.

¶ 28. A defendant cannot use motions after verdict to assert a new defense that he or she regrets foregoing at trial. *See Vollert v. City of Wis. Rapids*, 27 Wis. 2d 171, 174, 133 N.W.2d 786 (1965). In *Harrington v. Downing*, 166 Wis. 582, 585, 166 N.W. 318 (1918), the supreme court noted that the defendant brought a new defense to the trial court's attention for the first time after the trial. The trial court rejected the new contention because it was not timely presented, and the supreme court affirmed, explaining:

> It was decided at an early date that matters of defense not brought forward and called to the attention of the court and opposing parties during the trial in some appropriate manner so that in the ultimate determination of the issues their influence might be given due consideration, are effectually waived, and thereafter they cannot be urged as grounds for a new trial or reversal in this court . . . .

*Id.* More recently, in *State v. Hubanks*, 173 Wis. 2d 1, 28–29, 496 N.W.2d 96 (Ct. App. 1992), we refused to use our WIS. STAT. § 752.35 discretionary reversal power to enable a defendant to present an alternate defense merely because the defense presented during the trial proved ineffective. For the foregoing reasons, we conclude that Higgins' untimely assertion of the economic loss doctrine was properly rejected by the circuit court.

## *Evidentiary Rulings*

¶ 29. Most of Higgins' remaining appellate arguments can be gathered under the heading of evidentiary

778

issues. First, we reject Higgins' argument that no credible evidence supported the jury's finding of strict liability misrepresentation. Our earlier analysis regarding the jury's verdict, the jury instructions, the record evidence, and the distinction between false advertising under WIS. STAT. § 100.18 and strict liability misrepresentation sufficiently addresses this issue. The jury's verdict finding strict liability misrepresentation by Higgins is supported by credible evidence and will not be disturbed. *See Morden*, 235 Wis. 2d 325, ¶ 38.

¶ 30.   Next, Higgins argues that the circuit court erred when it excluded evidence of a buy-back provision in the sales contract. When reviewing the circuit court's evidentiary rulings, the applicable standard is whether the court appropriately exercised its discretion. *See State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998). We will sustain an evidentiary ruling if the record shows that the circuit court examined relevant facts, applied a proper legal standard, and reached a reasonable conclusion. *Id.* at 780–81. Generally, all relevant evidence is admissible. *See* WIS. STAT. § 904.02. However, relevant evidence may be excluded if its probative value is outweighed by the potential for unfair prejudice, confusion of the issues, waste of time, needless repetition, or other specified concerns under WIS. STAT. § 904.03.

¶ 31.   Here, the buy-back provision of the sales contract allowed Reuben to sell the property back to Higgins for the purchase price within one year. In a motion in limine, Reuben argued that the provision was irrelevant and may confuse the damages issue for the jury. Specifically, Reuben argued that the buy-back provision suggested Reuben could have avoided all

losses by, in effect, canceling the transaction. That suggestion, he asserted, would disregard all of the monetary investment Reuben had made in anticipation of building on the property. The court decided to exclude the provision, reasoning that "we still would have had the lawsuit" even if Reuben had exercised his option. The court determined the clause was irrelevant because Reuben did not exercise the option and because he was "entitled to have the property." In its ruling, the circuit court characterized its ruling as subject to further review if Higgins could demonstrate that there was "case law to the contrary." Reuben argues that Higgins waived any further consideration of this issue by refusing the court's invitation to review it again. We agree. Higgins was offered a rebuttal opportunity and there is nothing in the record to demonstrate she took it. Further, in her appellate brief, she all but abandons the argument by offering one authority-free paragraph reiterating her position that the court's ruling was erroneous.

■

¶ 32.    Next, Higgins contends that the court erred by refusing to allow Reuben's architect, Christine Jenk, to be named as a party to the action. She argues that Jenk knew a survey, not a drawing, was required to create the building envelope. She further argues that it was clear that the document Jenk used to create the envelope was a drawing. Therefore, the argument goes, there was a question of fact for the jury as to whether Jenk was negligent and, if so, how to apportion responsibility between Reuben, Koppen, Higgins, and Jenk.

¶ 33.    Reuben    responds    that    Higgins    never brought an action directly against Jenk. He also emphasizes that Higgins did not demonstrate any intent to introduce expert testimony to establish an architect's standard of care. Without such testimony, Reuben ar-

gues, the jury would not have had the ability to assess whether Jenk's actions fell below the standard of care.

¶ 34.  Courts have long recognized that certain kinds of evidence are difficult for jurors to evaluate without the benefit of expert testimony. *See, e.g., Cedarburg Light & Water Comm'n v. Allis-Chalmers Mfg. Co.*, 33 Wis. 2d 560, 567, 148 N.W.2d 13 (1967). When confronted with such a circumstance, "the trial court may decline, upon motion, to permit the [issue] to go to the jury in the absence of expert testimony." *Id.* While a circuit court's decision about admission of expert testimony is largely a matter within the discretion of the circuit court, *see State v. Friedrich*, 135 Wis. 2d 1, 15, 398 N.W.2d 763 (1987), it is an extraordinary step for a circuit court to require expert testimony, *see Cedarburg Light & Water Comm'n*, 33 Wis. 2d at 567. Before expert testimony is required, the circuit court must find that the knowledge necessary to answer the question presented is "not within the realm of the ordinary experience of mankind." *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969).

¶ 35.  Reuben asserts, "[T]he only potential allegation of negligence that could be found against Jenk was that she negligently designed the house, an allegation for which expert testimony was required." He directs us to *Herkert v. Stauber*, 106 Wis. 2d 545, 317 N.W.2d 834 (1982), for support. In *Herkert,* our supreme court held that expert testimony is generally required to establish negligent conduct by an architect. *Id.* at 570. Here, the circuit court determined that the type of knowledge needed to assess professional negligence against Jenk was not within the common knowledge of lay people. It therefore refused to allow the question of whether Jenk was negligent to reach the jury. This was a proper exercise of the court's discretion.

781

¶ 36.  Higgins also contests the circuit court's failure to hold a hearing on the reasonableness of attorney fees awarded pursuant to WIS. STAT. § 100.18. Because we have reinstated the jury verdict answer as to the § 100.18 claim, and statuory attorney fees are no longer available to Reuben, this issue is moot.

*Indispensible Party*

■

¶ 37.  Finally, Higgins argues that the circuit court improperly allowed the litigation to go forward absent an indispensable party. Specifically, Higgins asserts that Reuben's law firm, Davis & Kuelthau, S.C., was negligent when it hired Koppen to add land to the existing survey drawing, even though the firm knew that the extra land was never surveyed. Without Davis & Kuelthau included as a party to the lawsuit, Higgins argues, complete relief could not be properly apportioned between the existing parties.

¶ 38.  Higgins brought a third-party claim against Davis & Kuelthau, alleging that the firm's negligence caused harm and demanding "whatever sum may be adjudged against defendant Diane Higgins in favor of Plaintiff Dr. Charles F. Reuben." Reuben countered that only a client has standing to sue for legal malpractice and therefore Higgins' negligence claim was improper. He directed the circuit court to *Anderson v. McBurney*, 160 Wis. 2d 866, 873, 467 N.W.2d 158 (Ct. App. 1991), for the proposition that "[a]n attorney is not liable to third parties for negligent acts committed within the scope of an attorney-client relationship."[5]

---

[5] Reuben cited this case to demonstrate that any claim for professional negligence would belong to him, not Higgins. No allegation of legal malpractice is before us.

¶ 39. The circuit court determined that Davis & Kuelthau and Reuben acted as "one entity," and that there was no basis in law or in fact to "support a claim being made against Davis & Kuelthau as [a] separate entity." Seeking clarification, Higgins asked whether, if the law firm had been negligent, that negligence would be imputed to Reuben. The court responded, "Potentially. A jury might find that, yes." The court further held that Higgins' third-party complaint was essentially a legal malpractice action, which is a cause only available to the client. The court dismissed Higgins' third-party claim and granted Reuben's request for sanctions.

¶ 40. This issue was the subject of two additional motions. Reuben brought a motion in limine to preclude Higgins from arguing that Davis & Kuelthau had committed malpractice. The court granted the motion, reminding Higgins that she could attribute any allegations of negligence by the law firm to Reuben. Later, Higgins raised the issue in a motion to dismiss. Reuben requested summary dismissal of the motion, and apparently the court granted it, although no order appears in the record. On the first day of trial, the court reminded Higgins of its prior rulings and again explained that any negligence by the law firm would be imputed to the client. At the end of the trial, in its instructions to the jury, the court stated:

> Ladies and Gentlemen, prior to purchasing the property, Dr. Charles Reuben retained Davis & Kuelthau, specifically Jonathan Sopha, as his agent.
>
> Whatever the agent does in prosecution of the transaction is the act of the principal. That is to say, he who acts through another acts by and for himself.
>
> The knowledge of Jonathan Sopha is the knowledge of Dr. Charles Reuben.

783

¶ 41.  On appeal, Higgins frames the issue as one of procedural error. She asserts that the circuit court failed to employ the standard analysis under Wis. STAT. § 803.03(3), which addresses whether an absent party is an indispensable party. In his response brief, Reuben counters that the analysis was unnecessary because a cause of action for negligence against Davis & Kuelthau belonged only to Reuben, and Reuben chose not to pursue it in the instant litigation. He emphasizes, "Davis & Kuelthau was not a necessary party because complete relief could be afforded without its participation; any negligence of Davis & Kuelthau would be apportioned to Reuben."

¶ 42.  In her reply brief, Higgins abandons this issue. For this reason, and because Higgins does not have standing to pursue a legal malpractice claim against Davis & Kuelthau, we accept Reuben's uncontested position and we affirm the circuit court's determination that the lawsuit could proceed without Davis & Kuelthau as a named party. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (a proposition asserted by a respondent and not disputed in a reply brief is taken as admitted); *Anderson*, 160 Wis. 2d at 873 (attorneys are not liable to third parties for acts performed as part of a lawyer-client relationship).

## CONCLUSION

¶ 43.  We conclude that the circuit court erred when it changed the jury's answer to special verdict Question No. 1 and erred when it proceeded to answer follow-up Question No. 2. There was credible evidence in the record to support the jury's determination that the elements of strict liability misrepresentation were present but the elements of deceptive trade practice

under Wis. Stat. § 100.18 were not. Consequently, the circuit court's award of attorney fees and costs pursuant to § 100.18(11)(b)2. is also reversed. We remand for reinstatement of the jury verdict, only insofar as addressed by this opinion.[6] We affirm the remainder of the order for judgment for the reasons set forth above.

*By the Court.*—Order reversed in part; affirmed in part and cause remanded with directions.

---

[6] In his postverdict motion, Reuben also moved the circuit court to strike the jury's answer to special verdict Question No. 21, which asked the jury to apportion negligence between Reuben and Koppen. The court granted that motion, and no appeal was taken from that portion of the postverdict order. Therefore, our mandate does not require reinstatement of the jury's answer to special verdict Question No. 21.