ANNETTE KINGSLAND ZIEGLER, J.
¶ 99. (dissenting). Although the majority undertakes a careful analysis of Wis. Stat. § 51.61(l)(g)4.b., I disagree with the majority's application of that statute. I conclude that the evidence presented was sufficient to support extending Melanie L.'s involuntary medication order. I *192 also dissent because the majority does not properly abide by the standard of review and defer to the circuit court's determinations. Instead of searching the record for evidence to support the court's order, the majority searches the record to do the opposite.
I. FACTUAL BACKGROUND
¶ 100. In February 2011, the Outagamie County Circuit Court ordered that Melanie L. (Melanie) be committed on an outpatient basis and that she be medicated involuntarily. Under the commitment order, Melanie was subject to a number of outpatient treatment conditions.[1]
¶ 101. Before the orders expired, Outagamie County (the County) petitioned to extend the commitment and involuntary medication order for Melanie. On August 17, 2011, the circuit court held a hearing on the petition.
¶ 102. The court had before it testimony and a written letter on Melanie's condition from Kate Siebers (Siebers), a clinical therapist who served as Melanie's caseworker. The court also had before it testimony and a written report on Melanie's condition from Dr. Jagdish S. Dave (Dr. Dave), a clinical psychiatrist who performed an independent evaluation of Melanie. Both Siebers and Dr. Dave concluded that Melanie was incompetent to refuse medication.
*193 ¶ 103. Siebers testified that Melanie was not compliant with several terms of her outpatient treatment. On several occasions, Melanie did not make appointments with her psychiatrist or with Siebers, but she would do so only after prompting from Siebers. Siebers also testified that Melanie stopped taking medications without consulting Siebers or her doctor. Further, Melanie stopped seeing her psychiatrist, and instead, she sought out a different psychiatrist without informing the County. According to Siebers, Melanie lacked insight into her condition. Melanie's lack of follow-through in the treatment indicated that Melanie did not believe medication or treatment was necessary and did not understand the purpose of the treatment.
¶ 104. Dr. Dave testified that Melanie had been diagnosed with mental disorders that would cause her to have disturbed thoughts and perceptions, delusions, and paranoid thinking. He testified that Melanie had a history of taking medications for a few weeks and then discontinuing them without consulting a doctor. He testified that "she is not reliable for continuing the treatment on a voluntary basis, and if she does not continue recommended treatment, she would relapse, and she would end up institutionalized." Dr. Dave concluded that Melanie was incapable of "applying the benefits of the medication to her advantage."
¶ 105. Melanie did not testify and the County's evidence went uncontested. After hearing from the witnesses and reviewing the documentary materials, the circuit court made findings of fact, accepted the testimony and reports as credible, and applied the correct legal standard when concluding that Melanie was incompetent to refuse medication. Simply stated, the court explained that while Melanie was able to understand the various treatment options available, *194 she was unable to apply her understanding of those treatment options to her particular mental condition. The court granted the County's petition to extend Melanie's commitment, and signed an order stating that Melanie was mentally ill and would be treated in an outpatient facility. The court further granted the County's petition to extend Melanie's involuntary medication order, and signed an order stating that due to mental illness, Melanie "is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to [] her condition in order to make an informed choice as to whether to accept or refuse psychotropic medications." Melanie appealed only the involuntary medication order.[2]
II. ANALYSIS
¶ 106. The factual findings of the circuit court, and all reasonable inferences drawn from those findings shall not be disturbed unless they are clearly erroneous. K.N.K. v. Buhler, 139 Wis. 2d 190, 198, 407 *195 N.W.2d 281 (Ct. App. 1987); K.S. v. Winnebago Cnty., 147 Wis. 2d 575, 578, 433 N.W.2d 291 (Ct. App. 1988).
¶ 107. As stated by the majority, Wis. Stat. § 51.61(l)(g)4.b. requires the County to prove that Melanie, although possessing an understanding of the advantages and disadvantages of different medications or treatments, is "substantially incapable" of making the connection between that understanding and her mental illness. Majority op., ¶ 56.
¶ 108. Here the circuit court held that "while [Melanie is] able to understand and appreciate and articulate advantages and disadvantages, she is a person that by the clear greater weight of the evidence is not one who can reliably apply [that] understanding . . . to her present circumstances." This is precisely the finding demanded by the statute.
¶ 109. The majority opinion acknowledges that the circuit court's factual findings are entitled to deference and should not be disturbed unless they are clearly erroneous. See majority op., ¶ 81; K.N.K., 139 Wis. 2d at 198. This requirement is statutory in a case such as this one, where the trial was to the court and not to a jury: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Wis. Stat. § 805.17(2). Curiously, the majority opinion concludes that there was insufficient evidence to support Melanie's incompetence to refuse medication, but the majority does not conclude that the circuit court's factual findings were clearly erroneous. In so doing, the majority substitutes its judgment for that of the circuit court. Thus, the majority violates the very rule it recites, one of due deference to the factual findings of the circuit court.
*196 ¶ 110. In reversing, the majority opinion is concerned that Dr. Dave's substitution of the phrase "to her advantage" for the statutory phrase "to her condition" indicates that he was treating the commitment and involuntary medication inquiries as identical. Majority op., ¶¶ 91-93. But there is no requirement that an expert witness use any "magic words" during his or her testimony. For example, a medical expert's testimony regarding the degree of certainty for a diagnosis can meet the standard using a variety of phrases: "[Tjhere are '[n]o particular words of art' that a medical expert must employ in relating his or her opinion." Martindale v. Ripp, 2001 WI 113, ¶ 105, 246 Wis. 2d 67, 629 N.W.2d 698 (Wilcox, J., dissenting) (quoting Drexler v. All Am. Life & Cas. Co., 72 Wis. 2d 420, 432, 241 N.W.2d 401 (1976)) (second bracket in original).
¶ 111. Here Dr. Dave did not use the precise language of Wis. Stat. § 51.61(l)(g)4.b. in his testimony, but his medical opinion that Melanie was incompetent to refuse medication was clear. There is no requirement that he recite the precise language of the statute during his testimony.
¶ 112. In addition to Dr. Dave's testimony, the majority also objects to the circuit court's statement of the burden of proof — "clear greater weight of the evidence" rather than clear and convincing evidence— when orally discussing its decision.[3] Majority op., *197 ¶¶ 85-87. The majority points to the court's admission that" '[t]here may be differing [inferences] that might be drawn from the uncontested testimony . .. from Ms. Siebers and Dr. Dave'" as an indication that County failed to prove Melanie was incompetent by clear and convincing evidence. Majority op., ¶ 90.
¶ 113. The circuit court's use of "clear greater weight of the evidence" should not lead to reversal.[4] Whatever differing inferences could possibly have been drawn from the evidence, it is undisputed what inference was actually drawn by the circuit court — Melanie lacked the competence to refuse medication by clear and convincing evidence. The written order signed by the circuit court clearly and precisely states that Melanie "is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to [] her condition in order to make an informed choice as to whether to accept or refuse psychotropic medications." Failure to verbally state the exact stan *198 dard is not reversible error. See State v. Echols, 175 Wis. 2d 653, 672, 499 N.W.2d 631 (1993) (holding that "[a] trial court is not required to recite 'magic words' to set forth its findings of fact") (quoting Monson v. Madison Family Inst., 162 Wis. 2d 212, 215 n.3, 470 N.W.2d 853 (1991) (holding that a circuit court's failure to label specific conduct egregious is immaterial when such a finding is implicit in the court's decision)); Englewood Cmty. Apartments Ltd. P'ship v. Alexander Grant & Co., 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716 (Ct. App. 1984) (noting that, where a circuit court's implicit finding is clear, failure to recite "magic words" does not result in reversible error).
¶ 114. In this case, the circuit court was satisfied by clear and convincing evidence that Melanie was incompetent to refuse medication. Wis. Stat. §§ 51.20(13)(e), 51.61(l)(g)4.b. Though the circuit court did not recite the precise language of the burden of proof, the court's reliance on the expert testimony and reports in concluding that Melanie was incompetent to refuse medication demonstrates that the court was satisfied by clear and convincing evidence.
¶ 115. Finally, the majority insists that the evidence presented by the County inadequately supported the circuit court's conclusions, and it opines that the outcome of the case would be different if the County had offered additional witnesses and detail regarding Melanie's incapacity. Majority op., ¶¶ 94-95.[5]
*199 ¶ 116. Given that the County provided written reports and uncontested testimony both from the County employee who oversaw Melanie's case, as well as an independent psychiatrist who evaluated her, it is unclear what additional evidence the majority would have the circuit court consider. Furthermore, the majority opinion ignores that this testimony was uncontroverted. Melanie presented no expert testimony and she chose not to testify herself.
¶ 117. I conclude that the County satisfied its burden by clear and convincing evidence. See supra, ¶¶ 102-04. The circuit court had a written letter and testimony from Melanie's caseworker, who provided evidence that Melanie was noncompliant with the terms of her outpatient treatment by failing to keep in contact with the County and her doctors, changing care providers without prior approval, and self-adjusting her medications. The circuit court also had a written report and testimony from Dr. Dave, who informed that court that Melanie's illness caused her to have disturbed thoughts and perceptions, delusions, and paranoid thinking. Dr. Dave concluded that Melanie was unlikely to continue treatment voluntarily, as evidenced by her past noncompliance. From this evidence, the circuit court properly concluded that the County satisfied its burden to prove by clear and convincing evidence that *200 Melanie was substantially incapable[6] of applying an understanding of the advantages, disadvantages, and alternatives of her prescribed medication to her mental illness in order to make an informed choice as to whether to accept or refuse the medication.
¶ 118. An involuntary medication order takes effect only if patients cannot apply their knowledge of medications or treatments to their illness, which can be evidenced by failing to take medications as prescribed. Here, Melanie failed to take her medications as prescribed.
¶ 119. The majority opinion once again creates a substantial hurdle for counties to clear before an individual who has been committed because he or she has been found to be a danger to himself, herself, or others under Chapter 51 can be involuntarily medicated. In Virgil D., the court interpreted a portion of Wis. Stat. § 51.61 to limit when treatment could be involuntarily administered. Virgil D. v. Rock Cnty., 189 Wis. 2d 1, 9-11, 524 N.W.2d 894 (1994). The legislature passed Wis. Stat. § 51.61(l)(g)4.b. in response to Virgil D., which added a second way for counties to prove that a patient is incompetent to refuse medication. 1995 Wis. Act 268, § 2. Now the majority opinion repeats the roadblock Virgil D. created. Therefore, as a practical matter, the majority's elevated standard will result in counties being unable to properly treat those mentally ill individuals who are a danger to themselves or others.
¶ 120. For the foregoing reasons, I respectfully dissent.
*201 ¶ 121. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this dissent.

 Relevant to this case, Melanie was ordered to keep her appointments with court-ordered examiners, take all doses of prescribed psychotropic medications, and keep case management advised of her current contact information. The initial treatment plan developed hy the County also stated that Melanie "may not be involved in other forms of treatment unless approved by her therapist at Human Services." See majority op., ¶¶ 20-21.

 While Melanie's appeal was pending, both the commitment and the involuntary medication order expired. The majority opinion addresses the issue presented, despite its mootness, because the competency standard under Wis. Stat. § 51.61(l)(g)4.b. "presents an issue of great public importance" and "is likely to evade appellate review." Majority op., ¶ 80. Interestingly, another case heard by this court this term concluded that it would be inappropriate to address a moot question even though it "undoubtedly" presented a matter of great public importance and was likely to recur yet evade appellate review. Dane Cnty. v. Sheila W., 2013 WI 63, ¶ 7, 348 Wis. 2d 674, 835 N.W.2d 148 (per curium). The majority does not attempt to reconcile this disparate treatment, which will likely leave practitioners and judges unsure of whether and how to address moot questions when they present issues of great public importance and are likely to recur yet evade review.

 The majority opinion analyzes this case as if it were a jury trial. It was not. See majority op., ¶ 88 n.25 (discussing that the circuit court's misstatement of the burden of proof was analogous to an erroneous jury instruction). In this case, the circuit court, not a jury, acted as the fact finder. On appeal, the reviewing court has a duty to view the evidence in the light most favorable to court's verdict. Wis. Stat. § 805.17(2); Reuben v. Koppen, 2010 WI App 63, ¶ 19, 324 Wis. 2d 758, 784 N.W.2d *197 703. In other words, we search the record for evidence to sustain the verdict. Id. In this case, the majority opinion concludes that the circuit court's statement of the "clear greater weight of the evidence" was an error. See majority op., ¶ 88. To reach this determination, the majority opinion assumes that the circuit court was unaware of the correct burden of proof. However, the order of commitment, essentially the verdict, signed by the circuit court specifically referenced Wis. Stat. § 51.20(13), which sets forth the clear and convincing burden of proof. Reviewing the record in the light most favorable to the verdict, I conclude that the circuit court applied the correct burden of proof.

 It is not clear whether the majority opinion relies on the circuit court's statement "clear greater weight of the evidence" to support its reversal of the court of appeals. Majority op., ¶¶ 87-88. To the extent that it does, it offers no support for the contention that failing to recite the exact statutory language of the burden of proof demands reversal.

 As discussed in footnote 3, the circuit court, not a jury, acted as the fact finder in this case. The reviewing court has a duty to view the evidence in the light most favorable to the court's verdict. Wis. Stat. § 805.17(2); Reuben, 324 Wis. 2d 758, ¶ 19. Here, the circuit court cited the proper legal standard and concluded that the standard was fulfilled. The court's order stated that due to mental illness, Melanie "is substantially *199 incapable of applying an understanding of the advantages, disadvantages and alternatives to [] her condition in order to make an informed choice as to whether to accept or refuse psychotropic medications." The majority opines that its conclusion might he different had the County presented more evidence. See majority op., ¶ 95. In doing so, however, the majority fails to search the record for evidence to sustain the verdict and fails to view the testimony and reports in the light most favorable to the court's determinations.

 The majority's interpretation of "substantially incapable" as "to a considerable degree" should not be read as changing the standard required to prove that a person is incompetent to refuse medication under Wis. Stat. § 51.61(l)(g)4.b. Majority op., ¶ 70.